FILED & JUDGMENT ENTERED
Steven T. Salata

May 11 2015

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

*Laura T Beyer*
Laura T. Beyer
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

In re:                          )
                                )
**WILLIAM KIRBY RUNNELS,**      )          Chapter 13
                                )          Case No. 13-30084
                    Debtor.     )
                                )

**ORDER GRANTING DEBTOR'S MOTION TO MODIFY PLAN**

**THIS MATTER** comes before the court on the Motion to Modify Plan Base to Amount Paid ("Motion") filed by the Debtor on May 12, 2014. The Motion says the Debtor's confirmed Chapter 13 plan calls for monthly payments of $686, the Debtor was receiving temporary workers' compensation benefits when he filed this case, the Debtor settled his workers' compensation claim for $200,000 and payment of the medical expenses related to his injury, and the Debtor used a portion of the settlement proceeds to pay the total amount of his "Plan base"[1] as calculated at confirmation. The Motion asks the court to modify the Debtor's

---

[1] In other words, the Debtor sent the Chapter 13 Trustee the same amount of money (in a lump sum) that he would have paid over his entire plan term at monthly payments of $686.

plan to the amount of money already paid based on a material and substantial change in circumstances; namely, his inability to work as a result of the injury that led to his workers' compensation claim. The Motion notes that the Debtor will have to depend solely on the proceeds of the workers' compensation settlement and Social Security disability benefits to support himself for the remainder of his life. The court held hearings on the Motion on June 19, 2014 and October 14, 2014.[2] The Debtor, his attorney, and the Chapter 13 Trustee attended the hearings. No creditors of the Debtor attended the hearings or otherwise opposed the Motion. For the reasons that follow, the court grants the Debtor's Motion.

## FINDINGS OF FACT

In May 2010, prior to filing this case, the Debtor injured his back in an automobile accident when he lost consciousness due to low blood sugar while working as a truck driver. The Debtor's back injury was initially treated with medication and physical therapy, and the Debtor had surgery in November 2011 to fuse his vertebrae. In addition to the physical discomfort the Debtor suffered as a result of his injury, the Debtor's pre-existing problems with depression and blood sugar worsened after

---

[2] The June 19, 2014 hearing primarily consisted of legal argument on the impact of Pliler v. Stearns, 747 F.3d 260 (4th Cir. 2014), on the resolution of the Motion. The court continued the hearing in order to hear the Debtor's testimony on the threshold issue of whether his circumstances satisfied this circuit's standard for plan modification pursuant to Arnold v. Weast (In re Arnold), 869 F.2d 240 (4th Cir. 1989), and Murphy v. O'Donnell (In re Murphy), 474 F.3d 143 (4th Cir. 2007).

the accident.  In September 2012, however, a doctor cleared the Debtor to return to work with a 10% disability.

The Debtor filed this case and his Chapter 13 plan on January 17, 2013.  The Debtor's plan calls for payments of $686 for 60 months.  The Debtor's budget at filing, as shown on his Schedules I and J, shows total monthly income of $2919 from "Disability Benefits" ($319) and "Workers Comp Insurance Benefits" ($2600) and net monthly income of $764.  The Debtor testified that he intended to return to employment when he filed this case and proposed his Chapter 13 plan.

In January 2013, the Debtor returned to see his doctor again because of persistent pain and loss of strength and feeling in his right foot.  In February 2013, a doctor revised the extent of the Debtor's disability to 25% and told the Debtor that he could not lift more than 25 pounds, that he could only lift 25 pounds occasionally, and that the Debtor should limit the bending of his back.  In March 2013, the Debtor's doctor told him not to sit for more than two consecutive hours.  By May 2013, the Debtor was not sleeping regularly because of back pain and "sleeping terror."

The Debtor settled his contested workers' compensation claim in November 2013 for a lump sum of $200,000 and payment of his medical expenses related to the accident.  The Debtor's workers' compensation attorney received 25% of the lump sum, and

the Debtor's monthly workers' compensation benefits of $2600 ceased. Despite an increase in his Social Security disability benefits from $319/month to $1395/month, the Debtor's monthly income after the settlement was less than half the amount he received on the petition date.

The Debtor realized that $1395/month in income would not be sufficient and attempted to find employment without success. The Debtor testified that he sought work at a "temp outfit" for manufacturing jobs where he had previously worked, but he could not stand for hours or lift heavy materials regularly as the available positions required. He applied for work as a telephone dispatcher for a service that responds to broken down long-haul trucks, but the position required him to sit for 12 hours and was not compatible with his medical condition. The Debtor also inquired about a position transporting vehicles purchased at auction, but he could not afford the up-front costs.

## CONCLUSIONS OF LAW

At the beginning of their cases, Chapter 13 debtors propose plans to repay all or a portion of their debts to their pre-petition creditors. 11 U.S.C. § 1321. If a debtor's plan conforms to the requirements of the Bankruptcy Code, the court confirms the plan. 11 U.S.C. § 1322 & 1325. "The provisions of a confirmed plan bind the debtor and each creditor, whether or

not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). Courts have analogized a confirmed Chapter 13 plan to " 'a new and binding contract, sanctioned by the court, between the debtors and their pre-confirmation creditor[s],' " Murphy v. O'Donnell (In re Murphy), 474 F.3d 143, 148 (4th Cir. 2007) (quoting Matter of Penrod, 169 B.R. 910, 916 (Bankr. N.D. Ind. 1994)), and held that confirmed plans bind the parties to a Chapter 13 case even if they include provisions contrary to the Bankruptcy Code's requirements, United Student Aid Funds, Inc., v. Espinosa, 559 U.S. 260, 275 (2010).

Despite the binding nature of confirmed Chapter 13 plans, the Bankruptcy Code allows post-confirmation changes in certain circumstances. 11 U.S.C. § 1329; Murphy, 474 F.3d at 148. Section 1329 of the Bankruptcy Code governs the modification of Chapter 13 plans post-confirmation. Section 1329 provides, in pertinent part:

> (a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—
>> (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
>> (2) extend or reduce the time for such payments;
>> (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any

payment of such claim other than under the plan;
or
(4) reduce amounts to be paid under the plan by
the actual amount expended by the debtor to
purchase health insurance for the debtor . . . .
(b)(1) Sections 1322(a), 1322(b), and 1323(c) of this
title and the requirements of section 1325(a) of this
title apply to any modification under subsection (a)
of this section.
(2) The plan as modified becomes the plan unless,
after notice and a hearing, such modification is
disapproved.
(c) A plan modified under this section may not provide
for payments over a period that expires after the
applicable commitment period under section
1325(b)(1)(B) after the time that the first payment
under the original confirmed plan was due, unless the
court, for cause, approves a longer period, but the
court may not approve a period that expires after five
years after such time.

While § 1329 sets some requirements for the modification of a

Chapter 13 plan, it "does not explicitly state what justifies

such a modification." Arnold v. Weast (In re Arnold), 869 F.2d

240, 241 (4th Cir. 1989).

The seminal cases on the issue of the modification of

Chapter 13 plans in the 4th Circuit are Arnold and Murphy.  In

Arnold, the Chapter 13 debtor was a paper products salesman

whose income was commission-based.  Arnold, 869 F.2d at 241.

The debtor's confirmed Chapter 13 plan called for payments of

$800/month for 36 months.  Id.  An unsecured creditor of the

debtor filed a motion to modify the debtor's plan to increase

his plan payments due to a post-petition increase in the

debtor's income.  Id.  The bankruptcy court found that the

debtor's income had increased from the $80,000/year predicted by

the debtor at confirmation in 1985 to $199,999 for 1987,
increased the debtor's plan payments to $1500/month, and
extended the term of the debtor's plan to 60 months. Id. After
the district court affirmed the ruling of the bankruptcy court,
the debtor appealed to the Fourth Circuit. Id. The Fourth
Circuit concluded that "it is well-settled that a substantial
change in the debtor's financial condition after confirmation
may warrant a change in the level of payments" and that res
judicata[3] was only an impediment to modifying a debtor's plan
payments "where there have been no unanticipated, substantial
changes in the debtor's financial situation" and affirmed the
district court's decision. Id. at 241, 243, 245.

In Murphy, the Fourth Circuit considered the issue of plan
modification in two separate cases where a Chapter 13 trustee
sought to increase the debtors' plan payments. Murphy, 474 F.3d
at 145—46. In one of the two cases, the debtors sought
permission to refinance their residence and use the loan
proceeds to pay all of their remaining plan payments in a lump
sum. Id. at 146. The Chapter 13 trustee sought to modify the
debtors' plan to use the loan proceeds to pay all of the filed
claims at 100%. Id. The bankruptcy court agreed with the

---

[3] Res judicata, also known as claim preclusion, is "[a]n issue that has been
definitively settled by judicial decision" or "[a]n affirmative defense
barring the same parties from litigating a second lawsuit on the same claim,
or any other claim arising from the same transaction or series of
transactions and that could have been—but was not—raised in the first suit."
BLACK'S LAW DICTIONARY 1425 (9th ed. 2009).

debtors, the district court affirmed, and the trustee appealed. _Id._ at 146—47.   In the other case under review, the debtor wanted to sell his condominium and use the proceeds to pay off his remaining plan payments in a lump sum.   _Id._ at 147.   The Chapter 13 trustee opposed the debtor's motion and sought to require the debtor to pay all of the claims in his plan at 100%. _Id._   In this case, the bankruptcy court ruled for the trustee, the district court affirmed, and the debtor appealed to the Fourth Circuit.   _Id._

The Fourth Circuit reaffirmed the doctrine of _Arnold_ and held that the first consideration for a bankruptcy court reviewing a motion to modify a Chapter 13 plan is to "determine if the debtor experienced a substantial and unanticipated change in his post-confirmation financial condition."   _Id._ at 149—50. If the debtor did experience a substantial and unanticipated change, res judicata did not bar a modification, and the bankruptcy court should proceed to analyze the proposed modification under § 1329(a) and (b).   _Id._ at 150.   The Fourth Circuit affirmed both decisions of the district court.   _Id._ at 154.   The Court of Appeals concluded that the refinancing debtors did not experience a substantial change in their financial condition because they had simply exchanged the equity in their house for cash/debt and "a loan . . . is not income." _Id._ at 150.   The selling debtor did experience a substantial

change in his financial condition by receiving "a substantial amount of readily available cash without any debt," and the change was not anticipated because the debtor's condominium apparently appreciated in value from the scheduled value of $155,000 to the sale price of $235,000, a 51.6% change, in eleven months. Id. at 152.

This court concludes that the Debtor in this case experienced a substantial and unanticipated change in his post-confirmation financial condition and is eligible to modify his Chapter 13 plan under Arnold and Murphy. When the Debtor filed this case, he had monthly income of $2919, primarily from temporary workers' compensation benefits. While the Debtor did not expect to receive monthly workers' compensation payments for the entire term of his plan, he did expect to return to work and replace the temporary benefits with earned income. A year and a half after confirmation, the Debtor's expectations have not been realized. The Debtor now receives income of $1395/month and has not been able to find employment despite repeated attempts. The change in the Debtor's financial condition is substantial because his monthly income has decreased by approximately 52% and is no longer sufficient to fund a Chapter 13 plan. The change is unanticipated because the Debtor could not "reasonably anticipate"[4] that his disability would worsen, his income would

_____

[4] In concluding that the Debtor could not "reasonably anticipate" the changes to his post-petition financial situation, the court uses that term as it is

decrease substantially, and he would not be able to find employment. See Murphy, 474 F.3d at 149 ("A change is unanticipated if the debtor's present financial condition could not have been reasonably anticipated at the time the plan was confirmed."); Arnold, 869 F.2d at 243 (quoting In re Fitak, 92 B.R. 243, 250 (Bankr. S.D. Ohio 1988)).

Since the Debtor experienced a substantial and unanticipated change in circumstances, the court will proceed to examine whether his proposed modification satisfies § 1329. See Murphy, 474 F.3d at 150. The Debtor's proposed modification involves an early payment of the total amount of money the Debtor originally proposed to pay to his unsecured creditors. This proposal is consistent with § 1329(a)(2), which allows debtors to modify their plans to "reduce the time for [plan] payments."[5] The Debtor's proposal does not run afoul of any of

---

used in Arnold and Murphy. In Arnold, the Fourth Circuit held that "[a]lthough it was reasonable to expect Arnold's income to fluctuate from year to year because it relied so heavily on sales commissions, [the unsecured creditor] should not be expected to have anticipated a $120,000 jump in his income in only two years." Arnold, 869 F.2d at 243. Similarly, in Murphy, the Fourth Circuit concluded that "a 51.6 percent increase [in the value of the debtor's house over eleven months] certainly is an unanticipated change given the current market trends." Murphy, 474 F.3d at 152. The debtors in Arnold and Murphy are not the only people to have ever experienced significant increases in commission-based income and the value of a parcel of real property, respectively, but the changes could not be "reasonably anticipated." While it would not be unreasonable for the Debtor to expect continued medical problems related to his injuries and condition post-petition, the Debtor, as shown by his confirmed plan and his testimony, anticipated returning to work during this case and steady post-confirmation income; therefore, he did not "reasonably anticipate" his current situation.

[5] The court notes that there is some debate about whether an early payoff of a Chapter 13 plan is even a modification of the plan. See Murphy, 474 F.3d at 150–52 (noting the question of whether an early payoff of a Chapter 13 plan constitutes a modification and approving an early payoff by the debtor whose plan was not modified); In re Smith, 449 B.R. 817, 817–18 (Bankr. M.D. Fla.

the provisions of §§ 1322(a),[6] 1322(b),[7] or 1325(a),[8] including

the good faith requirement of § 1325(a)(3), so § 1329(b)(1) does

not bar the proposed modification.

---

2011) (overruling a Chapter 13 trustee's objection to a debtor's "Motion to
Approve Early Payoff of Chapter 13 Plan" and determining "that unsecured
creditors can elect to receive an early payout as long as they receive
adequate notice of the possible adverse consequences of such election and are
given an opportunity to be heard" without examining the debtor's motion as a
proposed modification).   As previously noted, no creditors of the Debtor
responded to the Motion or appeared at either of the hearings on the Motion.

[6]      (a) The plan—
              (1) shall provide for the submission of all or such portion
         of future earnings or other future income of the debtor to
         the supervision and control of the trustee as is necessary
         for the execution of the plan;
              (2) shall provide for the full payment, in deferred cash
         payments, of all claims entitled to priority under section
         507 of this title, unless the holder of a particular claim
         agrees to a different treatment of such claim;
              (3) if the plan classifies claims, shall provide the same
         treatment for each claim within a particular class; and
              (4) notwithstanding any other provision of this section,
         may provide for less than full payment of all amounts owed
         for a claim entitled to priority under section 507(a)(1)(B)
         only if the plan provides that all of the debtor's
         projected disposable income for a 5-year period beginning
         on the date that the first payment is due under the plan
         will be applied to make payments under the plan.

[7]      (b) Subject to subsections (a) and (c) of this section, the plan
         may—
              (1) designate a class or classes of unsecured claims, as
         provided in section 1122 of this title, but may not
         discriminate unfairly against any class so designated;
         however, such plan may treat claims for a consumer debt of
         the debtor if an individual is liable on such consumer debt
         with the debtor differently than other unsecured claims;
              (2) modify the rights of holders of secured claims, other
         than a claim secured only by a security interest in real
         property that is the debtor's principal residence, or of
         holders of unsecured claims, or leave unaffected the rights
         of holders of any class of claims;
              (3) provide for the curing or waiving of any default;
              (4) provide for payments on any unsecured claim to be made
         concurrently with payments on any secured claim or any
         other unsecured claim;
              (5) notwithstanding paragraph (2) of this subsection,
         provide for the curing of any default within a reasonable
         time and maintenance of payments while the case is pending
         on any unsecured claim or secured claim on which the last
         payment is due after the date on which the final payment
         under the plan is due;

(6) provide for the payment of all or any part of a claim allowed under section 1305 of this title;

(7) subject to section 365 of this title, provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected under such section;

(8) provide for the payment of all or part of a claim against the debtor from property of the estate or property of the debtor;

(9) provide for the vesting of property of the estate, on confirmation of the plan or at a later time, in the debtor or in any other entity;

(10) provide for the payment of interest accruing after the date of the filing of the petition on unsecured claims that are nondischargeable under section 1328(a), except that such interest maybe paid only to the extent that the debtor has disposable income available to pay such interest after making provision for full payment of all allowed claims; and

(11) include any other appropriate provision not inconsistent with this title.

[8] (a) Except as provided in subsection (b), the court shall confirm a plan if—

(1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title;

(2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid;

(3) the plan has been proposed in good faith and not by any means forbidden by law;

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;

(5) with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B) (i) the plan provides that—

(I) the holder of such claim retain the lien securing such claim until the earlier of—

(aa) the payment of the underlying debt determined under nonbankruptcy law; or

(bb) discharge under section 1328; and

(II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the

A year ago, the court's review of the Motion would have concluded at this point. Since the proposed modification involves a substantial and unanticipated change in circumstances and complies with § 1329, the court would approve the modification. Dicta in a recent opinion of the Fourth Circuit, however, has called into question whether a Chapter 13 plan can still be modified to shorten its term.

Pliler v. Stearns, 747 F.3d 260 (4th Cir. 2014), involves a pre-confirmation dispute over whether above-median debtors with

---

> plan on account of such claim is not less than
> the allowed amount of such claim; and
> (iii) if—
> > (I) property to be distributed pursuant
> > to this subsection is in the form of
> > periodic payments, such payments shall be
> > in equal monthly amounts; and
> > (II) the holder of the claim is secured
> > by personal property, the amount of such
> > payments shall not be less than an amount
> > sufficient to provide to the holder of
> > such claim adequate protection during the
> > period of the plan; or
> > (C) the debtor surrenders the property securing such
> > claim to such holder;
> (6) the debtor will be able to make all payments under the
> plan and to comply with the plan;
> (7) the action of the debtor in filing the petition was in
> good faith;
> (8) the debtor has paid all amounts that are required to be
> paid under a domestic support obligation and that first
> become payable after the date of the filing of the petition
> if the debtor is required by a judicial or administrative
> order, or by statute, to pay such domestic support
> obligation; and
> (9) the debtor has filed all applicable Federal, State, and
> local tax returns as required by section 1308.
> For purposes of paragraph (5), section 506 shall not apply to a
> claim described in that paragraph if the creditor has a purchase
> money security interest securing the debt that is the subject of
> the claim, the debt was incurred within the 910-day period
> preceding the date of the filing of the petition, and the
> collateral for that debt consists of a motor vehicle (as defined
> in section 30102 of title 49) acquired for the personal use of
> the debtor, or if collateral for that debt consists of any other
> thing of value, if the debt was incurred during the 1-year period
> preceding that filing.

negative disposable income could confirm a plan with a duration
of less than 5 years over the objection of a Chapter 13 trustee
if their unsecured creditors would not be paid in full.  Id. at
262.  While the Plilers' household income pursuant to the "means
test" of Official Form 22C was above the median income of
similarly-sized households in North Carolina, their schedules
showed monthly disposable income of negative $291.20.  Id.  The
Plilers proposed a Chapter 13 plan with payments of $1784 for
the first 15 months and $1547 for the next 40 months.  Id.
Their proposed plan would pay $78,595 to their secured
creditors, $3988.80 to the Chapter 13 trustee in commissions,
$3335 in attorney's fees, and nothing to their unsecured
creditors.  Id.  Their plan contained language that would have
allowed it to be completed in 55 months, id., instead of the
normal 60-month commitment period required of above-median
Chapter 13 debtors, § 1325(b)(4)(A)(ii).  The Chapter 13 trustee
objected to the Plilers' plan, and the Bankruptcy Court for the
Eastern District of North Carolina denied confirmation of the
plan and directed the trustee to file a motion seeking
confirmation of a plan with payments of $1784 for 60 months.
Pliler, 747 F.3d at 262—63.

A direct appeal to the Fourth Circuit followed.  Id. at
263.  The Fourth Circuit agreed with the bankruptcy court and
held that the "applicable commitment period" ("ACP") of

§ 1325(b)(4) is a temporal or freestanding plan length requirement. Id. at 264. The Fourth Circuit's conclusion was not tempered by the Plilers' negative disposable income or the bankruptcy court's reliance on the net income shown on their Schedules I and J. Id. at 265—67. "In sum, [the Fourth Circuit held] that a plain reading of the Bankruptcy Code, and Section 1325 in particular, mandates that an above-median-income debtor maintain a bankruptcy plan for five years unless all unsecured creditor claims are paid in full and irrespective of projected disposable income." Id. at 266.

The holding of Pliler can be distinguished from the situation facing this court based on the procedural status of each plan. The Plilers proposed a plan at the outset of their Chapter 13 case that failed to satisfy the applicable commitment period of § 1325(b)(4), while the Debtor proposed a plan that satisfied (and even exceeded)[9] the required ACP and now seeks to modify his plan pursuant to § 1329 fifteen months after confirmation due to a substantial and unforeseen change in circumstances. See In re Roe, 511 B.R. 137, 138 (Bankr. D. Haw. 2014) ("[A]s Mr. Roe points out, this case is not about initial plan confirmation, because the court has already confirmed Mr. Roe's plan."). There are numerous statutory and practical reasons why the analysis of whether a debtor must satisfy the

---

[9] The Debtor proposed a 5-year plan despite being eligible to propose a 3-year plan because of the below-median income shown on his Official Form 22C.

ACP requirement would differ based on whether the plan in question was pre- or post-confirmation. In fact, this court already analyzed the post-confirmation scenario and held that a "debtor's post-confirmation modifications pursuant to § 1329(a) need not comply with the requirements of § 1325(b)(1)(B) and, therefore, are not subject to a 60 month applicable commitment period." In re White, 411 B.R. 268, 275 (Bankr. W.D.N.C. 2008).[10] This court's White decision, however, was rendered prior to the Fourth Circuit's opinion in Pliler, and some of the dicta in Pliler led the Chapter 13 Trustee to believe that the Fourth Circuit may disagree with White.

For example, the Fourth Circuit frames the issue in Pliler as whether the debtors must "maintain" a 5-year plan, Pliler, 747 F.3d at 262, as opposed to whether they must "propose" or "confirm" a 5-year plan. Pliler discusses the "core purpose" of the 2005 Bankruptcy Code changes, id. at 264—65 ("While we find a plain reading alone sufficient to conclude that an 'applicable commitment period' is a length-of-time requirement for Chapter 13 plans, we nevertheless note that our conclusion harmonizes with the 'core purpose' underpinning the 2005 bankruptcy code revisions from which the 'applicable commitment period' provisions hail: 'ensuring that debtors devote their full disposable income to repaying creditors.' " (quoting Ransom v.

---

[10] Notably, the court decided White in a case filed after the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").

16

FIA Card Srvs., N.A., 562 U.S. 61, 78 (2011))), and says the
"core purpose is best effectuated when Chapter 13 plans must
last for three or five years, depending on the debtors' income,
unless all unsecured claims are fully repaid sooner," id. at
265. In addition, Pliler mentions the possibility that a debtor
with no disposable income at the outset of her case could
receive an unforeseen windfall such as an inheritance during her
plan. Id. (citing Carroll v. Logan, 735 F.3d 147, 152 (4th Cir.
2013)).

Pliler also specifically mentions § 1329, the Bankruptcy
Code section governing modification of Chapter 13 plans, and
uses the statutory language to counter the Plilers' argument
that the applicable commitment period is only relevant to
disposable income and is not directly connected to plan
duration. Id. at 266 ("[F]or purposes of plan modification, the
applicable commitment period appears to serve as a measure of
plan duration wholly unrelated to debtors' disposable income.")
The Fourth Circuit also notes that "Section 1329 expressly
incorporates the applicable commitment period as a temporal
limit for purposes of plan modification" by limiting the length
of modified Chapter 13 plans. Id. Notably, however, the
discussion of § 1329 in Pliler does not include a conclusion
that Chapter 13 plans cannot be modified to a shorter term than
the applicable commitment period required at confirmation.

One reason that <u>Pliler</u> does not conclude that Chapter 13
plans cannot be modified to shorter terms, and a reason that
this court will not so conclude without more specific guidance
from a higher court, is that the plain language of § 1329 does
not forbid that type of modification. "Statutory interpretation
necessarily begins with an analysis of the language of the
statute," <u>Holland v. Big River Minerals Corp.</u>, 181 F.3d 597, 603
(4th Cir. 1999) (citing <u>Landreth Timber Co. v. Landreth</u>, 471
U.S. 681, 685 (1985)), and "[i]f the language is plain and 'the
statutory scheme is coherent and consistent,' we need not
inquire further," <u>id.</u> (quoting <u>United States v. Ron Pair
Enters., Inc.</u>, 489 U.S. 235, 240—41 (1989)). In this situation,
the statute expressly allows modifications that shorten Chapter
13 plans.

Section 1329 is a relatively short statutory section that
is mostly devoid of the technical language that frequently makes
interpretation of the Bankruptcy Code difficult. Section
1329(a) states that "the plan may be modified . . . to . . .
reduce the time for [plan] payments." <u>Roe</u>, 511 B.R. at 139
("Section 1329(a) also permits modifications that would reduce
the plan payments or shorten the plan's term."). A plan
modification where a debtor pays the exact same amount of money
required by his confirmed plan to his creditors over a shorter
period of time literally "reduce[s] the time for [plan]

payments." The language of § 1329 could not be more plain and unambiguous in allowing modifications to shorten the duration of a Chapter 13 plan. Since a debtor's applicable commitment period is either 3 years (for below-median debtors) or 5 years (for above-median debtors), see § 1325(b)(4), as opposed to a range of time, there is no doubt that allowing a reduction in the time for plan payments is not consistent with applying the applicable commitment period to modifications.[11]

The language of § 1329(a)(2) is also not contradicted by the remainder of the section. Section 1329(b)(1) picks out several statutes that govern plan confirmation, namely §§ 1322(a), 1322(b), 1323(c), and 1325(a), and makes them also applicable to plan modification. The statutes named in 1329(b)(1), however, do not discuss the applicable commitment period. See Sunahara v. Burchard (In re Sunahara), 326 B.R. 768, 781 (B.A.P. 9th Cir. 2005); White, 411 B.R. at 272. Instead, the applicable commitment period requirement appears in § 1325(b). Congress picked out the Bankruptcy Code provisions it wanted to apply to plan modification and omitted the applicable commitment period, which leads to the conclusion that there is no applicable commitment period in relation to modified

---

[11] In other words, if the applicable commitment period required to confirm a Chapter 13 plan was a range of time, such as 2—4 years, an argument could be made that the language of § 1329(a)(2) allowed a modified plan to deviate within the applicable commitment period; since the applicable commitment period is a set period of time rather than a range, there is no way to coherently apply the applicable commitment period to § 1329(a)(2).

Chapter 13 plans.  See In re Ireland, 366 B.R. 27, 34 (Bankr. W.D. Ark. 2007) ("Absent a clear statutory command that 1325(b) applies to modifications under 11 U.S.C. § 1329, the Court is not inclined to adopt a tortured view of this statute in order to reach an absurd result.  There is no indication that with the enactment of BAPCPA, Congress intended to repeal, by implication, the provisions of 11 U.S.C. § 1329 that give the Bankruptcy Court flexibility to deal with changed circumstances after a plan has been confirmed.").

Some courts disagree with this conclusion.  For example, while admitting that § 1325(b) is not expressly made applicable to modifications by § 1329, that § 1329(a)(2) expressly provides for modifications that reduce the time for plan payments, and that "it might have been clearer if Congress had explicitly listed § 1325(b) or had referenced the requirements of § 1325 generally," the Bankruptcy Court for the Northern District of Georgia proceeds to conclude that the applicable commitment period does apply to plan modifications.  In re Buck, 443 B.R. 463, 469 (Bankr. N.D. Ga. 2010).  Buck reaches its conclusion based on the first line of § 1325(a), a section that, unlike § 1325(b), is made applicable to plan modifications by § 1329. Id.  Section 1325(a) begins: "Except as provided in subsection (b), the court shall confirm a plan if . . . ."  Therefore,

according to Buck, the entirety of § 1325(b), including the applicable commitment period, is incorporated into § 1329.

According to Buck, the fact that the modification statute does not mention the ACP statute is overcome by the fact that one of the statutes mentioned by the modification statute does mention the ACP statute. This conclusion is not unreasonable, but it is also not the "plainest" reading of the statute, which Buck admits by conceding that Congress could have made the conclusion more "clear." It also violates the principal of statutory interpretation that the specific controls the general. Clifford F. MacEvoy Co. v. United States, 322 U.S. 102, 107 (1944) ("However inclusive may be the general language of a statute, it 'will not be held to apply to a matter specifically dealt with in another part of the same enactment * * * Specific terms prevail over the general in the same or another statute which otherwise might be controlling.' " (quoting D. Ginsberg & Sons, Inc. v. Popkin, 285 U.S. 204, 208 (1932))). Section 1329 is entitled "Modification of plan after confirmation" and should contain everything one needs to know about modifications of Chapter 13 plans. Section 1329(b)(1) is solely devoted to listing the Bankruptcy Code statutes that apply to plan modification, and section 1325(b) is missing from the list. See White, 411 B.R. at 274 (noting that the Murphy court never referenced § 1325(b) in the course of evaluating the proposed

plan modifications). <u>Buck</u>'s incorporation by reference conclusion also proves too much. One does not have to read much further into § 1325(a) before much more than just § 1325(b) could be incorporated under similar logic. Section 1325(a)(1) allows courts to confirm Chapter 13 plans if "the plan complies with the provisions of this chapter and with the other applicable provisions of this title."[12] Under <u>Buck</u>'s logic, the entirety of Chapter 13 and all of the "other applicable provisions" of Title 11 apply to plan modifications equally with the specific statutory sections identified in the modification statute. If everything in Chapter 13 of the Bankruptcy Code is supposed to apply to plan modifications, Congress could have said so in § 1329 without going through the trouble of identifying specific parts of the chapter. See <u>Sunahara</u>, 326 B.R. at 781; <u>White</u>, 411 B.R. at 273.

<u>Buck</u> further attempts to support (but actually undermines) its argument by pointing out that § 1329(c) actually does mention § 1325(b). Section 1329(c) references the ACP requirement of § 1325(b), but it does so in order to limit the maximum length of Chapter 13 plans and says nothing about modifying plans to shorter lengths of time. § 1329(c) ("A plan

---

[12] <u>Buck</u> acknowledges § 1325(a)(1) and says it provides support for the conclusion that the applicable commitment period applies to modification because "[s]ection 1325(b) is one of the provisions of Chapter 13." <u>Buck</u>, 443 B.R. at 469. The problem with this conclusion is that all of the other parts of Chapter 13 that courts do not apply to plan modifications are also provisions of Chapter 13.

modified under this section may not provide for payments over a period that expires after the applicable commitment period under section 1325(b)(1)(B) after the time that the first payment under the original confirmed plan was due, unless the court, for cause, approves a longer period, but the court may not approve a period that expires after five years after such time."); White, 411 B.R. at 272.  If Congress intended to incorporate the entire ACP requirement, as opposed to only the maximum length, § 1329(c) could simply say so.  Instead, Congress only limited the maximum duration, which leads to the conclusion that there is no minimum duration for a modified Chapter 13 plan.  See Andrus v. Glover Constr. Co., 446 U.S. 608, 616—17 (1980) ("Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." (citing Cont'l Cas. Co. v. United States, 314 U.S. 527, 533 (1942))).

    In addition to the statutory support for allowing modifications like the one proposed by the Debtor, there are practical reasons to allow modifications that shorten Chapter 13 plans.  Creditors are not prejudiced by receiving payments from the Debtor earlier than expected, see In re Smith, 449 B.R. 817, 817—18 (Bankr. M.D. Fla. 2011) (applying the "bird in the hand" proverb to a debtor's Motion to Approve Early Payoff of Chapter

13 Plan); <u>White</u>, 411 B.R. at 276, creditors are protected by the change in circumstances and good faith requirements applied to plan modifications, <u>see</u> <u>White</u>, 411 B.R. at 275—76, and no creditors of the Debtor appeared at the hearings on the Motion or otherwise opposed the relief sought.   While there is some chance that a Chapter 13 debtor's financial position could improve later in her plan term, <u>see</u> <u>Pliler</u>, 747 F.3d at 265 (citing <u>Carroll</u>, 735 F.3d at 152), forcing debtors to stay in Chapter 13 plans while making nominal or no payments harms debtors, Chapter 13 trustees, and, arguably, creditors.[13] Debtors' fresh starts would be delayed while they waited out the possibility of an inheritance or another unexpected post-petition windfall.   Chapter 13 trustees, who generate their income from commissions on plan payments, would incur administrative costs without any or much income.   Creditors would have to wait to start conducting business with debtors post-discharge with little or no benefit in most cases.[14]

---

[13] As the Chapter 13 Trustee notes in his brief, requiring debtors to stay in Chapter 13 plans while making no plan payments could also write § 1328(b), which allows Chapter 13 debtors to seek hardship discharges when they are unable to complete their plans, out of the Bankruptcy Code.  One of the requirements for a hardship discharge is that "modification of the plan under section 1329 of this title is not practicable."  Modification of a Chapter 13 plan to payments of $0 is always practicable (but usually not practical).

[14] Creditors who disagree with this conclusion and would rather hope for "two in the bush" instead of the "bird in the hand" can object to motions seeking to shorten Chapter 13 plans.  In this case, none of the creditors of the Debtor responded to the Motion.

## CONCLUSION

The Debtor seeks to modify his confirmed Chapter 13 plan in order to make his plan payments in a lump sum instead of in installments. No creditors of the Debtor oppose his Motion. The Debtor's worsening health and financial condition satisfy this circuit's requirements for a plan modification pursuant to Arnold and Murphy. While the recent Pliler opinion could be read to disfavor reducing the length of Chapter 13 plans by modification, the language in Pliler is dicta, statutory interpretation supports allowing a reduction in the term of Chapter 13 plans, and requiring debtors to stay in their cases while making no plan payments would not benefit any parties in interest in most cases. Accordingly, the Motion is hereby **GRANTED.**

**SO ORDERED.**

This Order has been signed                    United States Bankruptcy Court
electronically. The Judge's
signature and Court's seal
appear at the top of the Order.